Thank you. Good morning. I'll call our last case of the morning. Flora v. LuzerneCounty et al. Flora v. LuzerneCounty et al. Good morning, Your Honors. May it please the Court, my name is Mary Catherine Roper. I represent Appellant Al Flora, Jr. I would like to reserve three minutes for my rebuttal. When Al Flora, then the Chief Public Defender of Luzerne County, could not persuade the county to fund the Office of Public Defender, the OPD, at necessary levels, he went to court for relief. When Al Flora learned, three years after the fact, that county administration had failed to expunge thousands of juvenile adjudications per an order of the Pennsylvania Supreme Court, he went to the presiding master appointed by that court and to outside counsel. Sure. And we're well familiar with the facts now, Ms. Roper, and I'm glad you went right to the question of the funding issue, because I want to ask you, and I want to first express gratitude for your forwarding to us, on November 13, the October decision of the Commonwealth Court. That was helpful. And I'm curious to hear how the decision of that court ought to affect our view, if at all, of whether Mr. Flora was acting within his official capacity when he took up the issue of funding and filed the lawsuit that he did in the state. Well, the question under Garcetti, Your Honor, is not whether he was acting in his official capacity, but whether he was performing the duties that he owed his employer. Okay. And clearly, he was acting in his official capacity. And clearly, according to the Commonwealth Court, they viewed this as being part of his duties, didn't they? When they say things like, in effect, you're not aggrieved in any personal way because this was an action taken in your capacity or pursuant to your duties as a public defender, doesn't that answer the question? It does not, Your Honor. For many public employees, they are, frankly, nothing but employees, right? Anything they do in their individual capacity, they do for their employer and subject to their employer's control. A public defender is different. The Supreme Court of Pennsylvania and the Supreme Court of the United States say that a public defender is not subject to the administrative control of the county executive. So if we were talking about administrative actions Mr. Flora had taken or failed to take, if he hadn't submitted a budget, if he showed up to work drunk, those kinds of things are under the control of the county executive. Well, let's be specific as to the test here. You have Lane, not just Garcetti. What's the Lane test and how does what he did here fit or not fit within that test? Lane, frankly, clarifies Garcetti and focuses on the ordinary day-to-day duties, what Garcetti called the daily activities, what Garcetti said was what he was paid to do when he went to work. The scope of his ordinary job duties. His ordinary job duties, Your Honor. Repeated nine times. Right, exactly. Obviously of great interest. Not something arising from his job, not something related to the professional responsibilities of his job. Part of his job is getting the funding for the office, right? You said it well. He's not just an employee. He is the public defender and he's responsible for getting the thing funded and operating it. In that role he goes and repeatedly battles for it and when he's not successful he files a suit and you try to say, well, we should still have standing in this state suit, commonwealth court, because there might be retaliation here. The effort to bring the retaliation issue into the state court proceedings sort of sounds like an effort to acknowledge or to say we've got an argument here. Please don't throw us out because we recognize this looks like something he's doing in his official capacity. There were two arguments for his standing in the commonwealth court. One was that he might still be reinstated if we win this one. The other was that Pennsylvania has sort of a super taxpayer status doctrine and we argued he was subject to that. Neither of those things is dispositive here. Don't we have an issue here that hasn't really been decided by the district court? The district court decided under Garcetti. Is the test the same or would we remand this case for the district court to decide whether this is an ordinary job duty of the public defender? Your Honor, there is nothing in the pleadings of this case that could allow this case to be dismissed at least before factual development of the record, which is what happened here. Because under Garcetti, it was a bit broad. The test was a bit looser, if you will. I don't agree with that, Your Honor. Justice Thomas says in his concurrence in Lane, which is of course a 9-0 decision, that this is little more than a straightforward application of Garcetti with some gloss that's extremely important here. I'm so surprised to hear you say that, Ms. Roper, because I thought your position was Lane is a big deal, that Lane changed things, that Lane said ten times, ten times, ordinary duties, ordinary duties, and that that's an important concept. It's an important clarification. Now, if you're telling us that Garcetti isn't... I'm sorry, it doesn't change Garcetti. The district court made a decision under Garcetti, but frankly under authorities that had read Garcetti too broadly in the words of the Lane decision. The Lane decision clarifies that when Garcetti says daily activities, it means daily activities. The public defender is supposed to represent people in court. He is supposed to go to the county and ask for funding. There is nothing in his, certainly in the statute, which says the public defender represents people and the county funds that effort. The statute doesn't say, and the public defender goes to court to enforce the county's obligations if it doesn't meet that obligation. Well, Garcetti is pretty specific about saying we're not tied to job descriptions, because of course job descriptions don't foresee every possible permutation of responsibility that goes with the office. Then let's talk about the practical analysis, which is what this court says in Forger, right? The practical question of, is this part of his ordinary job duties to sue his boss? The answer to that. And the Commonwealth Court says, yes it is. The Commonwealth Court says this is something undertaken in his official capacity fighting for these funds, and he's got no business in an individual capacity complaining to us. So how can we view what the Commonwealth Court said as being consistent with your argument that, oh, this is just citizen speech, he's just a regular guy speaking on a matter of public interest? Because a public defender in his official capacity owes duties beyond those he owes to his employer. Those duties are not subject to government control. They are when he acts... Are you talking about the attorney responsibilities, ethical responsibilities, is that what you're getting at? Yes. Okay. If that's your argument, then that proves too much, because if that's true, every attorney could always and forever say, I have independent professional obligations, so everything I say is citizen speech. It can't be the rule, can it? No, no, Your Honor. The law, very clearly, from the Pennsylvania Supreme Court, from the United States Supreme Court as well, is that when he is representing his clients, he is not subject to government control. He is not subject to the control of the executive. He is not acting as an employee. He is not a state actor. True. He is not anybody's... But when he's fighting for funding in his role as a bureaucrat assigned by the county, is he not acting specifically pursuant to his job responsibilities? Your Honor... I'm here to see that this office functions. Give me the money to make it function. And if we were talking about the way bureaucrats normally fight for funds, that is, filing budget reports, trying to persuade the county council, all things Mr. Flora did, then we might indeed be talking about his ordinary job responsibilities. When he goes to court, when he steps entirely outside the county structure and does something that is not contemplated... That's where it's breaking down for me because the Commonwealth Court says expressly, you don't have any standing here because this is part of what the federal public... Excuse me. Part of what the Luzerne County Public Defender does. And the guy who's in that office now can follow up on this suit, can make petitions under the Budget Act, et cetera. They seem to have thought about this. They seem to have said things that bear on it, didn't they? I don't agree with that at all, Your Honor. I think the Commonwealth Court is talking about standing. Which is not the same as the ordinary job. Right. As the Chief Public Defender, he has some standing under Pennsylvania law. The question of what is and is not First Amendment protected is independent from that question. But the standing question relies on whether or not he's acting according to his job duties, doesn't it? No, it doesn't, Your Honor. It relies on whether or not he's acting in the capacity as the public defender, which federal law tells us is not the same thing as the duties he owes his employer. Those are two distinct concepts. Where does federal law tell us that? In Polk v. Dodson County, where it says the public defender is not subject to administrative control in the same manner as other county employees. That's in talking about what you just said a minute ago. I'm representing my clients, et cetera. Do you have any case at all that says in making the office run and operating as the head of federal duties that that's different and not part of his day-to-day duties? Indeed. In the Pennsylvania Supreme Court cases cited in our brief, talk about the public defender as being outside county control cannot have been interfered with in the operation of his office by the county executive, nor even, frankly, by the court. That's the holding in the Dawson County public defender case. So the public defender is always going to be speaking as a citizen? No, Your Honor. If he went, if he did something that was, I'm sorry, I sort of blanked on an example of this. But the point is that when, what Lane is about and Garcetti is about, right? Interfering in routine government operations, there is nothing about suing your employer that is a routine government operation. And what Lane says is that when you answer to a separate, distinct, and independent obligation, you are not acting as a government employee. You are acting as a citizen responding to those obligations. Let me read you some things out of the complaint. You tell me if the allegations of the complaint itself don't undermine what you're asserting here. At Appendix 38, the assertion is made, he was fired for his efforts to secure desperately needed funding and to enforce the rights of OPD clients. At 39, the lawsuit was meant to ensure that OPD lawyers are able to provide the OPD's compliance with constitutionally adequate representation. At page 40, as Chief Public Defender, Plaintiff Floor was responsible for managing the OPD, overseeing its lawyers and employees, establishing policies, managing its budget, and ensuring its compliance with constitutional, statutory, and professional ethical guidelines. And I could keep going, but don't all of those allegations say his responsibilities were to see that there was adequate funding to enforce the rights. And if that is his responsibility as part of his job, how can it be that when he presses for that, even in the courts, that's no longer part of his job? Because a public defender does not owe responsibilities only to his government employer. He has independent responsibilities and when he acts to, when he steps entirely outside the chain of command, which matters, is not dispositive, but is a part of the analysis in all of these cases, when he steps outside anything that he is normally paid to do, expected to do, graded on, et cetera, he is acting not as a government employee. The default then is that he is acting as a citizen entitled to First Amendment protection. And it is that ability to act outside one's role as a government employee that all of the Supreme Court cases about employee speech are designed to protect and preserve. Fascinating because it's exactly at that point that the Commonwealth Court steps in and says, well, that is the role of the government employee. That's exactly the role of the federal employee. It is one of the powers of the government employee, Your Honor. It is standing of the This was something the county executive could have directed you to do or expected you to do. It simply is outside the control of the county executive. All right. We'll hear from you on rebuttal. Thank you. May it please the Court, Deborah Simon for the appellees, Luzerne County and Robert Lawton, county manager sued in his official capacity. Where is it in the Pennsylvania statutes that the duties of the public defender would include bringing a court case such as this? It's not expressly in the statute, Your Honor, but it is implied in the duties of it is addressed in the statute where it provides that the issues with respect to funding and the appointment of the public defender are subject to the control of the county. But I'm asking for a specific provision here. I'm looking at 16 Pennsylvania Constitution Statute 9960.6. Which addressed the duties, the representational duties. Exactly. And isn't that really the public defender's responsible for furnishing legal counsel to persons? Isn't that really the duty? Correct. So how do we read that to include bringing causes of action for funding? Those are not the only duties of the public defender. The public defender has duties to manage the office that are separate and apart from the duties to represent indigents and getting to my counsel, my co-counsel's point about this independent professional responsibility, it relates to the representation of clients. Now, ironically it might relate to representation, but to say that it is ordinarily part of his job duties, that's a bit of a stretch. I mean, we don't see public defenders with this, I mean, and there's a lot of problems with funding all over the country, public defenders. If it's part of their duties, shouldn't they all be running into court and suing? Well I think that's why no one else is, because there's an issue here with respect to the ability to bring one of these cases as the chief public defender on any basis other than the circumstances that were involved here. Well, I mean, that's an issue of standing, whether you can bring it, but since there's an issue of even when you can, it certainly can't be something you're supposed to be doing every day. Well, let's talk about how this case arose. This case arose Before you do, you mock the position of the plaintiff here by saying, of course I'm going to sue you. Of course there's no job description saying that you sue your employer. But then you go on to say in your briefing that the act does include requirements for a chief public defender to bring constitutional or common law court challenges to remedy chronic inefficiencies. You know, which is it? Is it crazy to say that there would be a job description, or is it the fact, or is it in fact the case that there are requirements in the act to bring constitutional or common law court challenges? What we're talking about here, Your Honor, is a public defender who elected not to do his job responsibilities in the manner that they were contemplated, which is within the political process of working within county government. So are you accepting Ms. Roper's argument? No, I'm not. I'm saying you can't argue that I'm not doing my duty the way I'm supposed to do it, and therefore I'm protected by the First Amendment. That is not Why can't you? That's their position precisely, which is I stepped outside that role. I filed suit and I'm no longer acting according to my duties. And look, they're telling me I'm not acting according to my duties. I'm off the reservation here, and therefore I can't be held to have just been acting in the role of the public defender. Well, in fact, they say they are. He is bringing the suit in his capacity as the public defender, that he has the rights, and this is what the common law court decides. I understand what they're saying. I'm trying to understand your briefing, because if I have conceded the point I was pressing Ms. Roper on, and I'm trying to give you an opportunity to tell me whether that's the right way to read it or the wrong way to read it, are you conceding that when he went to court, he was acting outside the scope of his duties as the public defender? Because if you are, that's one issue off the table, right? I'm not saying that. I'm saying that he elected to do his duty in a way that was not an expressly authorized way, but he was still trying to perform his duty. His duty was to secure funding, and he was trying to secure funding in a way that was insubordinate to his employer. That doesn't make it protected First Amendment activity, simply because he elects to do so in a way that thumbs his nose at his employer, that still is performing his duty. But his duty was to secure funding for the office. That's correct. Where is that listed as a duty? Where is that generally known? Is a public defender supposed to go and lobby? Isn't that the duty of the county to actually provide funding? It is, but his duty is to prepare a budget. That's in the county Home Rule Charter. Prepare a budget. That's fine. And submit the budget, and the budget becomes the operating funds for the office. He disagrees. But presumably he submits that budget, and then he gets funded. And he was funded. This is not a case about him not being funded at all. This is a case where the public defender elected to stop representing individuals, created a class of 300 people who sued the county along with the public defender, but his claim was not representing the rights of those 300 people. He had his own claim, and that claim was for funding. Set that aside for a second. Even if we accepted what you're saying, there's a second basis on which Mr. Flor claims that he has a retaliation claim here, and that is the reporting of the failure to expunge. Now, that's not the subject of anything that the Commonwealth Court said or anybody else. And there are thousands upon thousands of these young people whose records were not being expunged. Some of them may have been clients of the Office of Public Defender, but certainly many, many weren't, so you can't say this was part of his office. He did what he was supposed to do as a lawyer, as an officer of the court, reported to the Supreme Court, and he says, I got fired for that too. How is it, just focusing on that, how is that not citizen speech? Well, let's go back to the origins of his learning of that situation. According to his own submissions as attachments to his complaint, he was asked to go to the Office of Judicial Services by his supervisor, our client, Mr. Lawton, because there was a perception that there was an issue with respect to how the office was operating. So we will accept that he learned of it while he was doing something for his job, but that's exactly what Lane says doesn't matter. Lane says related to doesn't matter. You use the related to language in your brief. The district court uses related to language in its opinion, but related to is expressly rejected in Lane. So we can just take that right off the table, can't we? Because that, we're told by the Supreme Court, is not the test, correct? Correct. Okay. Let's go to what he did in response. Under the formal stationary of the Office of Public Defender, he reported the situation as the chief public defender. It can't really be that the stationary is what makes the difference, can it? It isn't the stationary, but it is that he is performing his duty as the chief public defender in making this report. Well, that's an assertion of the conclusion. What I'm trying to get you to respond to is their argument, which is that had nothing to do with his duties as public defender. That was an independent obligation he owed as an officer of the court, and that's why he did what he did. Now, that's what it would be helpful if you, instead of asserting the conclusion, if you said, no, that reasoning is wrong because. Tell me what your line of attack on their reasoning is. Okay. Well, first of all, let's start with what Lane does and doesn't do in this circuit. Lane addresses a conflict in the circuit between this court's decision in Riley and the whole body of Third Circuit law and the decision in Lane by the Eleventh Circuit. The Supreme Court comes down on the side of Riley. It does not reject Foraker. It does not reject Gorham v. Sessions, which is also a decision of this court, which is after Riley and which reasserts the validity of Foraker. But it doesn't say that in so many terms. I mean, you're construing actually the impact or the effect of it, but it comes out with a test. It comes out with a test, ordinarily part of his job duties. Well, in this case, it ordinarily was because of the operations of county government changing and his direct supervisor requesting that he go to this office in conjunction with the district attorney and look at what was going on there. But then when he finds out what is going on and then reports it, that then becomes, you're basically saying almost anything that he does as part of his, in his day-to-day work, is ordinarily part of his job duties. Well, certainly his employer was expecting him to do that, paying him to do that, and he was doing it on his employer's time. Where do you get that in the record? And that would certainly be a factual assertion, right? Wouldn't that be the sort of factual thing that would be wrong for a district court to be deciding at this level, stage of the proceedings? Well, first of all, let's go back to the district. No, no, before you go back, please answer my question, which is, you've just made a factual assertion, which is this was something that was part of his duties, he was asked to do this, and that was, you know, he was expected to make this report to the Supreme Court. And that prompts me to ask you, where is that in the record? And if it were in the record, you know, wouldn't it be the sort of thing that would amount to a factual decision that the court would be hard-pressed to be throwing out the window at the motion to dismiss stage? Well, first of all, it's in the attachments to his pleadings, in the letters that he writes to his supervisor. That the supervisor told him to report to the Supreme Court? He told him to make a report, and the issue is, did he make the report that he was directed to do, which is part of the issue here. But the reason the district court, the reason the district court did not address it in the way that you're speaking of is because it never was alleged in this complaint or in the argument, in the briefing in the district court that this claim related to his being asked by his supervisor to do this was a First Amendment protected activity. And in fact, if you look at counsel's statement in this court, in the concise summary of the case, issues to be raised on appeal. Whether the district court erred in holding plaintiff's public statements and decision to bring suit against his employer for the purpose of obtaining greater funding for the Office of Public Defender are without First Amendment protection. There is nothing in there that says his activity. What page are you reading from? I'm reading from the concise statement, summary of the case, which counsel filed in this court when the appeal was taken. Thank you. And it was our position in our brief here that this was not an issue in the district court. If you go to their complaint, looking at their First Amendment claim, count one, the removal of plaintiff from his position as Chief Public Defender in retaliation for his filing of the state court action violates his rights under the First and Fourteenth Amendment to the Constitution. There is nothing there about his activity in sending letters to the Supreme Court of Pennsylvania. It is simply not alleged in this complaint. They may be arguing it now for convenience, and because they think it's a better argument, it is not what was part of the record and the pleading upon which the motion to dismiss was decided. Given Lane and the fact that the district court didn't have Lane before it, shouldn't this case go back for the district court to make a determination under the test set forth in Lane? I don't think so, because the Commonwealth Court has already provided sufficient guidance to this court as to what But they're not a fact finder. The Commonwealth Court is not a fact finder as to official duties, are they? Well Or what's an ordinary job duty? Is that what they were deciding? We're dealing with something that's alleged to be protected activity. Ironically, in this case, the alleged protected activity, the complaint that was filed, was not even provided to the district court by Mr. Flora or his counsel. It only came up because we attached it to our pleadings. There is sufficient information contained in that complaint as to what the scope of the activity he was engaging in was. It's not the scope of activity. It's whether it was ordinarily part of his job duties. That's the test. Has that ever been addressed by the district court? Well, first of all, Your Honor, ordinarily doesn't answer the question of when an employee decides to go off the reservation to execute the ordinary responsibilities of his job. There is nothing in Lane that talks about an employee who affirmatively uses the power and authority of his office and the benefits he receives as a government employee to sue his employer. But using power and authority of your office can't be the test because, I mean, citizen speech in the capacity of public defender where you may have standing is not what Lane set forth. But he's not speaking about the public defender's independent role as a counsel to those clients. Relief he's seeking, the remedies that are involved in the underlying complaint, are solely related to his managerial functions in the office. But related to is out. We're not into related. That was Garcetti. And the scheme has changed. So, again, I say, should we not send this back for the district court to apply the Lane test? There is nothing in the Lane test that is not completely in the record with respect to the nature of the conduct that was at issue here. Well, that's, with all respect, that doesn't seem to be responsive. The question to you is, Lane comes after the district court's decision. Lane adds the word ordinarily in front of the word job duties. Lane emphasizes the word ordinarily repeatedly. If that is a new test or if one prefers if it is a nuance or an additional clarification to Garcetti, shouldn't that be the test that the district court is required to apply in deciding whether you can make a dismissal at this stage? Isn't that a fact-bound question that the district court should have to look at before it says, you know what, you're out? Well, it's a fact-bound question that relates to a position and duties that were already considered by the state court, which is in a better position to determine what is the nature of the underlying case. Did the Commonwealth Court say anywhere in its decision, anywhere, that this is part of his ordinary duties? If it were not part of his ordinary duty, he would not have the authority to bring the case in the Commonwealth Court. I don't know about that. Standing is the same. Well, they are conceding. I heard him concede, I think, that it's part of the official, how do they put it, the public defender was acting within his official capacity. Are you saying that that is a precise overlap with ordinary duties? I believe so, Your Honor. And what's your authority for that? Well, I would refer the court to the post-Lane decision of the D.C. Circuit in McCoy MPOY v. Ray, 758 F. 3rd, 285, in which they talk about a public employee reporting conduct that interferes with his job responsibilities, which is what we have here, that that is speech. It interferes with his job responsibilities. And this is what they are saying here, is that the county's failure to provide him funding interferes with his ability to perform his responsibilities to clients. And that speech is not, is made pursuant to official duties, because it does not merely concern them but attempts to implement them. And that is what was occurring here. If you are speaking under the aegis of a job title, speaking about the duties of the job, making complaints about conduct supposedly interfering with the duties of the job, then that is conduct that is not protected by the First Amendment. Okay. Now, if I can just beg the indulgence of Judge Rendell and Judge Nygaard for a moment. You argued vociferously that they waived any argument about the reporting of the failure to expunge records. And I can see in your answering brief where you argue that it is not supported by their complaint. But did you argue in your briefing, and I might have just missed it, that they didn't present this in the court below? I believe that we did say that, yes. Can you direct me to that? Are you asking did we say that in our brief? That's exactly what I'm asking. I believe we did, although we say that we're going to address it anyway because of the convenience of the court. Okay. Well, if you can't put your hand right on it, perhaps you could look for it while we hear something. Argued Flores' complaint does not allege he was terminated at 22. Yeah, 22 is where you talk about it's not supported by the complaint. Right. And what I'm asking you is did you argue that it was not, that this line of argument wasn't present in the district court? No. I didn't see that. Yes, while we hear rebuttal, why don't you look for it? I didn't see it at 22, 23 of your brief. Thank you. I know this is your time, but maybe you could start by answering whether you waived the argument about the assertion that failure to expunge reporting was a basis of retaliation. We did not, Your Honor. First of all, at paragraph 61 of the complaint, we specifically allege that he was fired because of the report about the expungements. I admit we don't talk about it under the caption count one First Amendment, but I don't think that that's specific to that arrangement of pleading. So it's in paragraph 61? It's in paragraph 61 that he was fired both for the lawsuit and for the report to the Supreme Court master. Did you present it to the district court? Was it argued to the district court? It was argued to the district court, and the district court ruled on that question. It addressed that question. He didn't come up with that himself. That was part of the briefing below. And what of the argument that when you filed your appeal, you listed the issue as being the funding issue and didn't say anything about the expungement? Well, that is not, as I understand it, part of the record or part of the review of the district court's decision, but I certainly apologize for that oversight. It has all along been part of our argument that he was fired for two reasons, and both of those were First Amendment protected reasons. Okay. Thank you. All right. In your conversations with opposing counsel, you have focused on exactly the issue here. What Lane says is the question under Garcetti is whether the specific speech at issue was something that was part of his ordinary job duties. There is a difference between one's capacity and power as particular kinds of public officials, certainly as a public defender, and what one is expected to do when one goes to work day to day. I think that is clear in part because Garcetti says many cases say there are many things you can say as a public employee that are protected under the First Amendment. But what is not protected is what your employer has a right to control. That is the day-to-day performance of your job duties, which may indeed involve speaking and writing, but does not involve suing your employer. It involves going to court on behalf of other people, but does not involve suing your employer. I would like to address POI, the decision from the D.C. Circuit. The D.C. Circuit had preexisting law that said if the speech is complaining about something that interferes with your ability to do your job, then it is too related to your job and it is not subject to First Amendment protection. And the court said, well, Lane may indeed undermine that, but we don't need to decide that today because when this speech was disciplined, that was the law of our circuit, and therefore qualified immunity, which was the question before that court, applies even if Lane changes that rule. Exactly the same kind of analysis that caused the dismissal of damage claim in Lane. Does the fact that in that case and in Lane itself the Supreme Court said the law was not, as we have articulated, was not clearly established, indicate that Lane does make a change to Garcetti? Yeah, I think what the Supreme Court says in Lane is that the law was not clearly established in the 11th Circuit that truthful testimony by a public employee was protected. It certainly was established in the 3rd Circuit, and therefore on that specific point, it's a very narrow qualified immunity analysis focusing on the exact kind of claim. But when it comes to the interpretation of Garcetti, the application of Garcetti, no one, not the concurrence, not the majority, suggests that this is something new. It is perhaps a course correction, but it is not presented as a new way of describing Garcetti. The word ordinary was used in the lower courts in Garcetti. The Supreme Court says instead daily activities and other things that we've quoted throughout our briefs. I don't think that's a change in the law. In terms of whether you send it back, this Court has many times, particularly in this area, applied decisions from the United States Supreme Court without sending the case back to the district court. Well, it's a question whether it's a factual finding that we think the record is sufficient or not. Is it not a factual finding? Well, no, Your Honor. It's a factual finding as to whether it's ordinarily part of his job duties? In this case, Your Honor, it's a mixed question of fact and law, but all the facts are before you. The district court heard no facts. That's really not in your interest to be saying that.  Your Honor, I think you should take that route. My light is red, but I would be delighted to answer any further questions or clarify anything I haven't made clear. Okay. Judge Nygaard? I have no questions. Thank you so much. Thank you. Counsel, do you want to augment? Is it page 22, 23? Okay. Page 13. Thank you. Thank you very much. All right. We'll take the case under advisement as well argued. Ask the clerk to recess court.